**Doris M. YOUNGBLOOD and Cecil R. Youngblood as Natural Guardians and Next Friends of Matthew L. Youngblood, Petitioners–Appellees,**

v.

**SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Respondent–Appellant.**

No. 93–5181.

United States Court of Appeals, Federal Circuit.

Aug. 10, 1994.

Randell C. Ogg, Sherman, Meehan & Curtin, P.C., Washington, DC, argued for petitioners-appellees. With him on the brief was Matthew P. Maloney.

Christine N. Kohl, Atty., Dept. of Justice, Washington, DC, argued for respondent-appellant. With her on the brief were Frank W. Hunger, Asst. Atty. Gen. and Barbara C. Biddle, Atty.

Before ARCHER, Chief Judge,* NIES and NEWMAN, Circuit Judges.

ARCHER, Chief Judge.

■ The Secretary of the Department of Health and Human Services (HHS) appeals from a decision of the United States Court of Federal Claims affirming the Special Master's decision that the present value discount provision of the National Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa–10 to –34 (1988 & Supp. IV 1992) (Vaccine Act), should be applied before determining whether the Vaccine Act's statutory $250,000 cap on pain and suffering awards is met. 28 Fed.Cl. 566. We reverse and remand.

I.

The parties stipulated that Matthew Youngblood was entitled to receive compensation under the Vaccine Act, but they disagreed as to the amount to be awarded for pain and suffering and emotional distress pursuant to § 300aa–15(a). After a hearing, the Special Master found that Matthew was entitled to $100,000 for past pain and suffering and $180,000 for future pain and suffering. She then discounted the future component to a net present value of $109,161.50 pursuant to 42 U.S.C. § 300aa–15(f)(4)(A), and determined that Matthew was to be paid the combined sum of $209,161.50. The $250,000 statutory cap on awards for pain and suffering of 42 U.S.C. § 300aa–15(a)(4) did not factor into her calculations because the discounted sum of $209,161.50 was less than the statutory cap.

HHS appealed the Special Master's decision to the Court of Federal Claims on the grounds that the Special Master should have applied the $250,000 statutory cap in determining the amount of compensation to be awarded for pain and suffering before discounting to net present value the portion of

---

* Chief Judge Archer assumed the position of Chief Judge on March 18, 1994.

that award attributable to future pain and suffering. While not disputing the special master's calculation of $280,000 for pain and suffering, HHS argued that § 300aa–15(a)(4) required this amount be reduced to $250,000 before the discounting provision was applied.[1] The Court of Federal Claims rejected HHS's interpretation of the statute and affirmed the Special Master's decision. It reasoned that if the statutory cap applies before discounting, the recipient could never be awarded an amount equal to the statutory cap unless the award is based solely on past pain and suffering. According to the court, the legislative history of the Vaccine Act shows that Congress expected half the petitioners to be awarded the statutory cap amount. In addition, the court found it appropriate to defer to the Special Master's interpretation because it was not clear that it was unreasonable and because Special Masters are charged with primary responsibility for applying the Vaccine Act.

## II.

■ This appeal involves the interpretation and interplay of two provisions of the Vaccine Act—§ 300aa–15(a)(4) providing for a statutory cap on awards for pain and suffering and § 300aa–15(f)(4)(A) requiring that the compensation award be discounted to net present value and paid in a lump sum. We review such questions of statutory interpretation *de novo.* 42 U.S.C. § 300aa–12(f) (Supp. IV 1992); *Neher v. Secretary, Department of Health and Human Services,* 984 F.2d 1195, 1198 (Fed.Cir.1993). Statutory interpretation begins with the language of the statute. *K Mart Corp. v. Cartier, Inc.,* 486 U.S. 281, 291, 108 S.Ct. 1811, 1817–18, 100 L.Ed.2d 313 (1988); *see also Good Samaritan Hospital v. Shalala,* —— U.S. ——, ——, 113 S.Ct. 2151, 2157, 124 L.Ed.2d 368 (1993). In interpreting the statute, the court must look not only at the particular statutory provision in question, but also at the language and design of the statute as a whole. *K Mart Corp.,* 486 U.S. at 291, 108 S.Ct. at 1817–18.

HHS's position is that in calculating compensation under the Vaccine Act, the amount of the award is first determined under paragraphs (a)–(e) of § 300aa–15 and then that amount is paid according to paragraphs (f)–(j). Thus, the statutory cap under § 300aa–15(a)(4) should be applied when determining the amount of the award, and the discount provision of § 300aa–15(f)(4)(A) should be applied when determining the discounted amount to be paid.

Section 300aa–15 is concerned with compensation under the Vaccine Act. It contains ten subparagraphs: paragraphs (a)–(e) identify and place limits on the types of compensation that are to be awarded, and paragraphs (f)–(j) prescribe how the payment of that compensation is to be made. As pertinent here, § 300aa–15(a) provides as follows:

(a) General Rule.

*Compensation* awarded under the Program to a petitioner under section 300aa–11 of this title for a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, shall include the following:

 . . . .

(4) For actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.

42 U.S.C. § 300aa–15(a) (emphasis added).

Section 300aa–15(f) describes how payment of "compensation" under the Vaccine Act should be made. The discount provision of § 300aa–15(f)(4)(A) states, in relevant part, that:

(4)(A) Except as provided in subparagraph (B), *payment of compensation* under the Program shall be determined on the basis of the net present value of the *elements of the compensation . . . .*

42 U.S.C. § 300aa–15(f)(4)(A) (emphasis added).

■ We read the statute as providing that § 300aa–15(f)(4) determines the amount of

---

**1.** Under the HHS's computation, the future damages component of Matthew's award would be reduced from $180,000 to $150,000. This reduced amount would then be discounted to approximately $91,000 under § 300aa–15(f)(4)(A), and Matthew would be paid an immediate lump sum of approximately $191,000.

the award to be paid in a lump sum after compensation has first been determined under the first five subparagraphs of § 300aa–15, including the subparagraph (a)(4) provision for pain and suffering with its statutory cap. We are therefore convinced that in calculating the amount of compensation for pain and suffering and emotional distress under the Vaccine Act, the statutory cap of § 300aa–15(a)(4) must be applied when determining the amount of "compensation" and the discount provision of § 300aa–15(f)(4)(A) must then be applied to the "compensation" amount to determine the immediate lump sum that is to be paid.

The Youngbloods argue that application of the statutory cap before discounting means that the maximum statutory amount will virtually never be paid out, which they argue makes the cap almost meaningless. As a limit on the award for pain and suffering, however, the statutory cap is not meaningless even if the amount awarded is later discounted to less than $250,000. Further, as the Court of Federal Claims recognized, the statutory cap will also come into play in absolute terms whenever the *past* pain and suffering portion of the award is greater than $250,000.

The Youngbloods also argue that their construction of the interplay between the two statutory provisions at issue is warranted when the present statute is interpreted in light of the original 1986 Vaccine Act. They point out that the 1986 Vaccine Act contained the $250,000 statutory cap but did not contain a requirement that compensation be paid in a lump sum on the basis of net present value. National Vaccine Act of 1986, Pub.L. No. 99–360, § 2115, 100 Stat. 3743, 3767 (1986). The discount provision of § 300aa–15(f)(4)(A) and the lump sum payment requirement were added by the 1987 amendments to the Vaccine Act, enacted as part of the Omnibus Budget Renegotiation Act of 1987, Pub.L. No. 100–203, § 4303(d)(1)(B), 101 Stat. 1330, 1330–222 (1987). The Youngbloods conclude that the intention behind the statutory cap of § 300aa–15(a)(4) as enacted in 1986 must therefore have been that claimants could receive up to $250,000 for pain and

suffering, and that the "award" specified in § 300aa–15(a)(4) must refer to the amount victims are to be paid.

We do not agree. First, the distinction between determination of the award and determination of the amount to be paid was present in the 1986 version of the Vaccine Act. Just as in the present law, the first five paragraphs of the original Vaccine Act's § 300aa–15 identified and placed limits on the types of compensation, and as to pain and suffering the amount of compensation, and the later paragraphs of § 300aa–15 provided how payment of that compensation was to be made. § 2115, 100 Stat. at 3767–69. Further, under the original Vaccine Act, payments for pain and suffering and emotional distress could be paid periodically or in a lump sum.[2] § 2115(a), 100 Stat. at 3768. If payments were made periodically, they would have to be capped at $250,000. The present value of such a periodic pay out measured at the time of the award would of course be less than $250,000 and presumably equivalent to the amount calculated by the computation that HHS espouses. Thus, the language of the original Vaccine Act does not provide support for the Youngbloods' argument. Moreover, as we read the current statute, the computational method is clear and we must follow the statute as it is written.

Finally, the Youngbloods rely on a statement in the House of Representatives Report estimating that "the maximum amount for pain and suffering would be paid to half the awardees." H.R.Rep. No. 100–391, 100th Cong., 1st Sess. at 694, *reprinted in* 1987 U.S.C.C.A.N. at 2313–1, 2313–368, 2313–369. They argue that, if the statutory cap is applied prior to the discount provision, a significant number of awardees will not receive the maximum amount because awards under the Vaccine Act are likely to go to children whose past pain and suffering would be relatively lower than their future pain and suffering. The Court of Federal Claims' decision on appeal here was based in large part on this same reasoning. We do not discern from the legislative history, however, a clearly expressed intent by Congress that is contrary to the plain language of the statute.

---

2. The statute was not clear how such a lump sum would be calculated.

**556**

*Johns–Manville Corp. v. United States,* 855 F.2d 1556, 1559 (Fed.Cir.1988) ("[A]bsent a very clear legislative intent, the plain meaning [of the statute] will prevail.").

Accordingly, we reverse and remand the case to the Court of Federal Claims.

No costs.

*REVERSED and REMANDED.*